UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALLAN G. FOWLDS,

       Petitioner,

v.                            Case No:  2:12-CV-55-FTM-29CM
                                   Case No. 2:10-CR-49-FTM-29SPC
UNITED STATES OF AMERICA,

       Respondent.

---

## OPINION AND ORDER

This matter comes before the Court on petitioner's *pro se* Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #89)[1] filed on February 1, 2012.  The government filed a Response in Opposition to Motion (Cv. Doc. #10) on April 25, 2012.  The petitioner filed a Reply (Cv. Doc. #11) on May 24, 2012.

### I.

On March 25, 2010, a federal Complaint (Cr. Doc. #1) was filed against petitioner charging mail fraud.  Petitioner, who was then in the Lee County Jail on a state case, was obtained in federal court pursuant to a writ of habeas corpus ad prosequendum.  (Cr. Docs. ## 3, 4.)  At the March 26, 2010 initial appearance the magistrate judge

---

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion.  The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

appointed the Federal Public Defender to represent defendant and entered an order of detention based upon the pending state case. (Cr. Docs. ## 5, 8, 9, 10.)  On April 7, 2010, a federal grand jury in Fort Myers, Florida returned a one-count Indictment (Cr. Doc. #12) charging petitioner with Mail Fraud in violation of 18 U.S.C. Sections 1341 and 1342.

On July 8, 2010, at petitioner's request, the assistant Federal Public Defender (Frank W. Zaremba [Zaremba]) filed an unopposed Motion to Withdraw as Counsel (Cr. Doc. #24) based upon a complete breakdown of the attorney client relationship.  After a hearing, the magistrate judge granted counsel's motion on July 22, 2010 and directed the Clerk to appoint new counsel from the CJA Panel. (Cr. Docs. ## 27, 28.)  Jonathan K. Thiele (Thiele) was appointed as counsel for petitioner effective July 23, 2010 (Cr. Doc. #30), and represented petitioner for the remainder of the federal case.

On August 4, 2010, Thiele filed a Motion for Pretrial Release on Bond (Cr. Doc. #31) noting that the only basis for pretrial detention stated in the Detention Order (Cr. Doc. #10) was the pending state court case.  The motion stated that on July 29, 2010, petitioner appeared before the Lee County Circuit Court and was sentenced to 60 days county jail in one case (which had already been served) and to a separate jail term in a second case, which sentence would be completed on or about August 12, 2010.  The magistrate judge held hearings on August 9, 2010, and August 13, 2010, and denied the

motion without prejudice, finding petitioner was a risk of flight without a third party custodian. (Cr. Docs. ## 36, 41, 42.) On September 30, 2010, the magistrate judge held another bond hearing, ultimately releasing defendant with a third-party custodian. (Cr. Docs. ## 49, 50, 51.)

On November 2, 2010, petitioner signed a Plea Agreement in which he agreed to plead guilty to the mail fraud charge and, among other things, waived his right to appeal or collaterally challenge his sentence. (Cr. Doc. #63.)  Petitioner appeared before the magistrate judge on November 8, 2010, and pled guilty to the Mail Fraud count. (Cr. Doc. #65.)  On November 9, 2010, the District Court accepted the plea and adjudged petitioner guilty of that count. (Cr. Doc. #66.)

On February 4, 2011, the District Court sentenced petitioner to a term of imprisonment of 48 months, to be followed by a term of supervised release. (Cr. Doc. #74.)  Judgment (Cr. Doc. #80) was filed on February 10, 2011.  An Amended Judgment (Cr. Doc. #85) was filed on April 19, 2011, withdrawing a prior order of restitution. Petitioner did not file a direct appeal. (Cv. Doc. #1-1 Ex. 1.)

**II.**

Petitioner raises two issues in his timely Section 2255 motion: (1)  ineffective assistance of counsel by his first attorney for insisting that petitioner dispose of pending charges in the State Case before sentencing in the instant federal case, which increased his criminal history and resulted in a higher Sentencing Guidelines

range (Cv. Doc. #1-1 Ex. 1); and (2) trial court error by miscalculating the number of victims and the amount of loss and, consequently, miscalculating the offense level increase under the Sentencing Guidelines. (Cv. Doc. #1-1 Ex. 1.)

## A. Evidentiary Hearing

A district court shall hold an evidentiary hearing on a habeas petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (internal quotation marks and citation omitted). However, a "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous . . . ." Id. at 715; see also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008). Here, even when the facts are viewed in the light most favorable to petitioner, the record establishes that petitioner is not entitled to relief. Therefore, the Court finds that an evidentiary hearing is not warranted in this case.

## B. Ineffective Assistance of Counsel

Petitioner asserts that his first attorney, Frank Zaremba, provided ineffective assistance of counsel when he "told

- 4 -

[petitioner] to plead out to [petitioner's] State charges before [Zaremba] would proceed with [petitioner's] Federal Case." (Cv. Doc. #1-1 Ex. 1.)  Petitioner asserts that Zaremba insisted that he plead out to the State charges and then Zaremba would apply for a Federal bond and Petitioner could be out of jail while awaiting the outcome of his federal case.  Petitioner asserts that Zaremba never informed him that this would result in two more points on his criminal history. (Cv. Doc. #1-1 Ex. 1.)  Further, petitioner would never have settled his state case before being sentenced in federal court had he known of the increase in criminal history points. (Cv. Doc. #1-1 Ex. 1.) Petitioner asserts that as a result his criminal history score was increased, which put him in a higher criminal history category, and resulted in a longer sentence. (Cv. Doc. #1-1 Ex. 1.)

    The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established.  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. Hinton v. Alabama, 134 S. Ct. 1081, 1087-88 (2014) (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010); Strickland v. Washington, 466 U.S. 668, 687, 694 (1984)).

    The proper measure of attorney performance is simply

reasonableness under prevailing professional norms considering all the circumstances.   Id. at 1088.   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).   This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90.   To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeal, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under Strickland, petitioner must show more than that the error had "some conceivable effect on the outcome of the proceeding."   Marquard v. Sec'y for the Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation marks omitted).   Rather, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   Hinton, 134 S. Ct. at 1089.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks and citations omitted).

The record establishes neither deficient performance nor prejudice to petitioner.   The pending state court case had caused

a Detention Order in federal court, and resolving that case would impact petitioner's federal pretrial release.     Mr. Thiele established as much by obtaining such release after petitioner's state court *nolo contendere* pleas.    The record reflects not only that Zaremba was not representing petitioner on the state case, he was not representing petitioner in the federal case at the time of petitioner's state court pleas.    Additionally, the record establishes that petitioner knew of the collateral consequences on the Sentencing Guidelines at the time of his state court pleas. Petitioner states that this was the impetus for his discharge of Zaremba.   "[A]fter Mr. Zaremba's insistence, I pled out to the State charge.    After finding about the effect that would have on my sentencing in Federal Court, I had Mr. Zaremba removed as by Atty." (Cv. Doc. #11.)   Zaremba filed his motion to withdraw as counsel (Cr. Doc. #24) on July 8, 2010; a hearing was held before the magistrate judge on July 22, 2010; the motion was granted and an order was entered the same day. (Cr. Doc. #27.)   Thiele filed a Notice of Appearance (Cr. Doc. #29) on July 29, 2010.   Petitioner asserts, and the Presentence Report confirms, that petitioner pled *nolo contendere* to the state offenses on July 29, 2010 and was sentenced on the same date.   Even though he knew the consequences, petitioner chose to plead *nolo contendere* on July 29, 2010, in state court while represented by state-court appointed counsel, thus facilitating his

federal pretrial release.   Petitioner's claim of ineffective assistance of counsel by Frank Zaremba lacks merit.

## B. Calculation of the Sentencing Guidelines

Petitioner asserts that the Court miscalculated the number of fraud victims and the amount of their loss and, consequently, misapplied offense level increases under Sentencing Guidelines Manual Sections 2B1.1(b)(1) and (b)(2) (2010). (Cv. Doc. #1-1 Ex. 1.)  Petitioner argues that the federal government simply took over a state investigation that had determined a loss amount of $20,000 and 16 victims, and the Sentencing Guidelines were improperly calculated using a loss amount of $90,000 and 250 victims. (Cv. Doc. #1-1 Ex. 1.)

The government responds that petitioner's claim is procedurally defaulted by the lack of an appeal, barred by the sentence appeal waiver provision of his Plea Agreement, and without merit in any event.  (Cv. Doc. #10 at 6-11.)  In reply, petitioner asserts that Thiele was responsible for the lack of a direct appeal because he incorrectly advised petitioner that he could not appeal any part of his sentence.

Petitioner, through counsel, objected to the Presentence Report's calculation of the loss amount and the number of victims. (Cr. Doc. #67.)  A two-day sentencing hearing was conducted, (Cr. Docs. ## 92, 93), and the Court overruled petitioner's objections. After imposition of sentence, petitioner was informed of his right

to appeal "to the extent permitted by your plea agreement." (Cr. Doc. #93 at 67-68.)   No direct appeal was taken, and petitioner challenges the calculation of the Sentencing Guidelines range for the first time in this Section 2255 proceeding.

"Absent an express waiver of the right to appeal his sentence, a defendant who pleads guilty and is sentenced under the Guidelines has a right to direct appeal of his sentence. Because of that opportunity, a defendant has no right to raise Guidelines sentencing issues in a § 2255 proceeding." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995)(citations omitted).   A criminal defendant who has knowingly and voluntarily waived his right to appeal cannot challenge his sentence on appeal.   United States v. Bushert, 997 F.3d 1343 (11th Cir. 1993).   Williams v. United States, 396 F.3d 1340 (11th Cir. 2005), held that a valid sentence-appeal waiver precludes Section 2255 claims based on ineffective assistance of counsel at sentencing. Id. at 1342.

On November 2, 2010, defendant signed a Plea Agreement (Cr. Doc. #58) which states, among other things, that the agreement and his guilty plea were voluntary and knowing, (Cr. Doc. #59 at 13-14), and that he had read the Plea Agreement and understood its terms.   (Cr. Doc. #59 at 20.)   Petitioner's written Plea Agreement contains a waiver of appeal and collateral challenge provision, which states in pertinent part:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the **right to appeal defendant's sentence or to challenge it collaterally on any ground,** including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines . . . .

(Cr. Doc. #63 at 12) (emphasis added).  The sentence appeal waiver specifically excepts the following claims from the appeal waiver:

> (a) the ground that the sentence exceeds the defendant's applicable guideline range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(Cr. Doc. #63 at 12-13) (emphasis in original).

At the change of plea colloquy three days later, petitioner affirmed under oath that he had read, understood, signed and initialed each page of the plea agreement.  (Cr. Doc. #90 at 7-8.) During the Rule 11 colloquy, the magistrate judge specifically questioned petitioner about the sentence appeal waiver. (Cr. Doc. #90 at 14-15.) The magistrate judge stated:

> Under some circumstances, you or the government does have a right to appeal the sentence, but you have limited your rights to appeal, and if you look at page twelve, paragraph five, or enumerated five [of the plea agreement], it says . . . that you are expressly waiving your right to appeal your sentence or to challenge it collaterally on any grounds including the ground that the Court erred in determining the applicable guideline range pursuant to the sentencing guidelines, except the ground that the sentence

- 10 -

>    exceeds your applicable guideline range as determined by
>    the Court, the ground that the sentence exceeds the
>    statutory maximum penalty or the ground that the sentence
>    violates the 8th Amendment to the Constitution.

(Cr. Doc. #90 at 14-15.)  When the magistrate judge asked if
petitioner understood the content and consequences of the sentence
appeal waiver provision, petitioner clearly stated, "[y]es, I do."
(Cr. Doc. #90 at 15.)  At the conclusion of the guilty plea colloquy,
the magistrate judge concluded that petitioner's guilty plea was
"knowingly, voluntarily and intelligently made and it's not the
result of any threats or promises except those contained within the
plea agreement . . . ."  (Cr. Doc. #90 at 30.)

     Such a waiver provision is valid if made knowingly and
voluntarily.  United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir.
2001) (citing Bushert, 997 F.2d at 1350-51).  To establish that an
appeal waiver was made knowingly and voluntarily, the government must
show that either (1) the district court specifically questioned the
defendant about the waiver during the plea colloquy, or (2) the record
makes clear that the defendant otherwise understood the full
significance of the waiver.  United States v. Johnson, 541 F.3d 1064,
1066 (11th Cir. 2008).  "Solemn declarations in open court carry a
strong presumption of verity[,]" and "constitute a formidable
barrier in any subsequent collateral proceedings." Blackledge v.
Allison, 431 U.S. 63, 74 (1977).  The magistrate judge's explicit
explanation of the sentence appeal waiver and petitioner's

forthright acceptance firmly establish that petitioner knowingly and voluntarily waived the right to appeal or collaterally challenge his sentence. See Johnson, 541 F.3d at 1066.

**C. Alternative Merits Determination**

Alternatively, the Court concludes that there was no error in the calculation of the Sentencing Guidelines. Sentencing Guidelines Section 2B1.1(b)(1) provides for an eight level increase if the victims' loss exceeds $70,000. At petitioner's sentencing hearing, the Court applied the adjustment because "the government has established, by at least a preponderance of the evidence, that the amount of loss exceeded the $70,000." (Cr. Doc. #93 at 55.) Petitioner asserts that the Court's findings are clearly erroneous because the Court "did not take into consideration the following: Two Social Security monthly payments . . . , deposits from income of a repair and maintenance service of mine as well as transfers between another account." (Cv. Doc. #1 Ex. 1.) The record refutes petitioner's allegation.

To calculate the victims' aggregate losses, the Court relied on the government's methodology, which explicitly excluded legitimate deposits and interbank transfers that petitioner had commingled with the proceeds of his fraudulent enterprises. At sentencing, the Lee County Sheriff's Office fraud investigator explained the methodology as follows:

[The] [t]otal that went through [petitioner's] bank

account was over $140,000.  I [calculated the loss by]
taking into consideration he was receiving some monies for
other **jobs that he had done on the side and Social Security
benefits**.  So I subtracted those from the amount that was
in his account.  There were some other monies that went
into the account that I could not show an actual loss of
that money and make that money -- I could not match that
money up to an image of a check of where that money came
in.  It was a direct transfer, wire transfers, and . . .
the amount that made up the 110,000. Based on that fact
that I couldn't show that loss, I just went ahead and left
that out of the spreadsheets, to be conservative, because
of the fact I just couldn't show where the monies went."

(Cr. Doc. #93 at 8) (emphasis added).  Based on these conservative

calculations, the investigator counted a minimum "loss of $93,310.53

. . . ."  (Cr. Doc. #93 at 8.)  That figure only included money in

petitioner's accounts that the investigator could definitively

verify "was actually the loss that the victims took." (Cr. Doc. #93

at 20.)  Accordingly, petitioner's allegation that the Court

erroneously counted legitimate deposits derived from social

security, employment, and interbank transfers as losses to victims

lacks any record support.

Sentencing Guidelines Section 2B1.1(b)(2) provides for a six

level increase if the number of victims exceeds 250.  After hearing

expert testimony at sentencing, the Court found that the number of

victims exceeded 250 and, accordingly, applied the sentencing

adjustment.  (Cr. Doc. #93 at 53-54.)  Petitioner asserts that the

Court's findings are clearly erroneous.  Petitioner alleges that

"[s]ince each respondent was asked to submit a payment of forty to

forty-five dollars, [the Court] divided that figure into [its]

- 13 -

incorrect $90,000 total of the fraud, then claiming that there was more than two hundred, fifty victims of the crime . . . ." (Cv. Doc. #1 Ex. 1.)  In addition, petitioner asserts that the Court should not have applied the adjustment because the Lee County Sheriff's Department identified "less than sixteen victims."  (Cv. Doc. #1 Ex. 1.)

The record affirmatively contradicts petitioner's allegations. The Court did not determine the number of victims by dividing the total loss by the standard check amount.  Rather, the Court relied on evidence and expert testimony presented by the government at petitioner's sentencing hearing. (Cr. Doc. #93 at 5-28.)  The government's fraud investigator testified that petitioner defrauded 2,026 separate victims. (Cr. Doc. #93 at 7.)  The investigator used a simple method to calculate the number of victims; he "actually had 2,026 images of checks, with all the victims' names, and those were compiled into the spreadsheets." (Cr. Doc. #93 at 27.)  The Court asked if the investigator had "actually eyeballed the checks[.]" (Cr. Doc. #93 at 27.)  The investigator stated: "Yes, Your Honor; I physically put every single one of these into a spreadsheet.  It took me two months." (Cr. Doc. #93 at 27.)  The Court further noted that, "[e]ven if you took the defendant's figures of $48,000, roughly, in fraudulent income, and divided it by the top end of the 40 to $60, if you use the $60, you still have over 800 either people or transactions . . . ."  (Cr. Doc. #93 at 54.)

The evidence presented at the sentencing hearing supports the Court's conclusion that petitioner defrauded more than 250 victims. Accordingly, petitioner's assertion that the Court misapplied Sentencing Guidelines Manual Section 2B1.1(b)(2) is without merit.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Petitioner's Motion under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #89) is **DENIED.**

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement

to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(citations and internal quotation marks omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this __4th__ day of August, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


Copies:
Petitioner
Counsel of Record